914 So.2d 122 (2005)
STATE of Louisiana, Appellee
v.
Deborah L. CASTON, Appellant.
No. 40,093-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
*125 Daryl Gold, Shreveport, for Appellant.
Don M. Burkett, District Attorney, Michael E. Daniel, Assistant District Attorney, for Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
STEWART, J.
The defendant, Deborah Caston, was convicted of two counts of unauthorized use of a movable. She was sentenced on each count to five years at hard labor. Two years of the sentences were suspended and she was placed on five years of probation. The sentences were to run consecutively. The defendant was also ordered to pay restitution in the amounts of $60,012.99 to Martinez Management, Inc., and $257,750.00 to the law office of Jack Gamble.
The defendant now appeals. For the reasons that follow, the defendant's convictions are affirmed, but because we find that the sentences are excessive, we vacate each sentence and remand for resentencing consistent with this opinion. Further, the order of restitution under La. C. Cr. P. art. 883.2 is vacated, and the matter remanded for the trial court to determine what amount, if any, should be paid in *126 restitution under the provisions of La. C. Cr. P. arts. 895 and 895.1.

FACTS
On July 31, 2002, Jack Gamble, an attorney from Mansfield, confronted his secretary of 22 years, Deborah Caston, and accused her of forging his signature and stealing money from several bank accounts. He had previously alerted personnel of the Desoto Parish Sheriff's Office of his suspicions. He told Caston she had to go to that office for questioning, and he accompanied her there. She gave two statements regarding the accusations and became very distressed. The coroner was called, and Caston was committed to a mental health facility in Shreveport. On September 10, 2002, she was charged via a bill of information with 37 counts of theft over $500 and 11 counts of forgery. A motion to quash this bill of information was filed, but there is no indication in the record that this motion was ever ruled on. Nonetheless, on September 17, 2003, an amended bill of information was filed listing 36 counts of theft over $500 and 11 counts of forgery. On the day of trial, June 28, 2004, another amended bill of information was filed which charged Caston with three counts of theft over $500. The charges in that amended bill of information are:
Count #1  Between March 31, 2000, and May 17, 2002, Deborah Caston committed theft of $22,500.00 from the client trust account of Jack R. Gamble.
Count #2  Between February 16, 1998, and July 29, 2002, Deborah Caston committed theft of $257,750.00 from the law office bank account of Jack R. Gamble.
Count #3  Between April 8, 1997, and July 19, 2002, Deborah Caston committed theft of $60,012.99 from the bank account belonging to Martinez Management, Inc.
At the jury trial, Gamble testified that Caston had been a loyal secretary for over 20 years and that she had access to three of his business checking accounts. Two were law firm checking accounts for the operating expenses and client trust funds, and the other was the checking account of Martinez Management, Inc. Testimony showed that Gamble owned a one-half interest in the management company and another corporation known as AT & N Martinez owned the other portion of the company. Further testimony revealed that AT & N Martinez was owned by Nanette and "B.B." Martinez. Testimony showed that only Gamble and Caston had access to the bank account for the management company.
According to Gamble, Caston ran the day-to-day operations of his law office as well as the management enterprise. Martinez Management, Inc., owned and operated a group of condominiums in Shreveport. Gamble testified about withdrawals that had been made via checks drawn on the account belonging to Martinez Management, Inc., with the aid of an exhibit. Gamble testified that checks totaling $57,312.99 had been either cashed or deposited into Caston's account. He testified that she was unauthorized to receive these funds. Nanette Martinez testified that Caston had "handled the books" of the management company. She stated that other than bonuses received at the end of the year, Caston received no compensation for her work. She further testified that she had not been involved in the day-to-day operations of that company and specifically stated on direct and on cross-examination that she did not know how much Caston received in bonuses. She identified one check dated December 28, 2001, in the amount of $6,000.00 as possibly being a bonus check. This check was not one of *127 the checks enumerated by Gamble as evidence of funds taken from the company.
Caston testified that there was no residential manager for the 32 condominium units and that she coordinated both the leasing and repairs via long distance telephone calls. She testified that the checks withdrawn on the management company account were to pay for expenses related to these condominiums. She testified that only she and Gamble were authorized to negotiate checks on the account. She stated that she often had to put items such as appliances for the condominiums on her charge card since it was more convenient to pay that way than to drive to Shreveport to submit a check for the items. She testified that she reimbursed herself for these expenses.
Gamble testified that he did not have a very active law practice since he had other business interests in oil, gas and timber. He testified that he was very fortunate to have other funds; therefore, he had not noticed that the law firm or management company money had gone missing. He also admitted that he took regular trips out of town to watch and bet on horse races. His testimony was that from March 1998 until July 2002, Caston either cashed or deposited into her account checks totaling $208,750.00 that were payable to him. He denied getting the use of any of these funds. He also testified that she negotiated checks made out to her totaling $48,500.00 which the paperwork classified as loans to her. He denied loaning her this money. As to two of these checks, he questioned whether or not it was his signature shown as maker.
The state prepared an exhibit that was published to the jury. The exhibit contained pages showing a copy of each check in question, a copy of the back of the check showing the endorsement, and if applicable, the account into which the funds were deposited. For some of the checks, copies of check stubs were also provided. Gamble identified each of the checks shown on these pages as checks that he knew nothing about. He testified that he did not receive the funds from the checks made payable to him and that he did not authorize Caston to cash these checks or use the funds.
Caston testified and admitted that she had indeed cashed most of the checks in question. She stated that the checks drawn on the law office account and made payable to Gamble had been cashed upon Gamble's direction when he wanted money for trips. She testified that he took lots of trips and bet on horses and football games. She elaborated that she was further instructed not to bring back "trash money," but to get the funds in denominations of $100.00 bills. She also testified that Gamble did not want crisp new $100.00 bills because he said those bills stuck together and it was too easy to accidentally pay too much at the betting windows.
Caston also testified that she had put money belonging to her and her husband into the law office account, explaining that she was planning to leave her husband and was hiding funds from him. She identified one check in the amount of $18,500.00 as funds received from an insurance settlement for her daughter and as monies belonging to her and her husband. She identified a check in the amount of $15,000.00 as fees she earned in partition suits that she had left in the account so that when she left her husband she "would be able to start over and not have to divide anything up with him."
Caston also testified that Gamble knew as early as May 1998 that she was hiding money in his checking account because he was the subject of an IRS audit that brought the accounting practices into question.
*128 The jury acquitted Caston on count one, the theft of funds in the client trust account. It returned responsive verdicts of guilty of unauthorized use of movables valued over $1,000.00 in counts two and three.

DISCUSSION

Sufficiency of Evidence
Caston argues that the evidence does not establish that she ever used the money in question. Although the state introduced Caston's bank records in an effort to show she converted funds to her own use, she argues that the record does not prove conversion. She asserts that there was nothing to support the conclusion that her standard of living increased or that she was living beyond her means.
Caston further argues that because she was authorized to write checks off the accounts, the state did not negate the reasonable hypothesis that the withdrawal of the funds was authorized "based on the historical relationship between the parties."
The state argues that it was not necessary for it to show what Caston did with the money. It counters that the record indicates that she wrote checks to herself and deposited them into her personal account without authorization.
Although the record does not reflect that this appellant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
In reviewing the sufficiency of the evidence to support a conviction, appellate review is controlled by the standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La.1984); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs *129 denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
We note that a jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Mitchell, 35,970 (La.App. 2d Cir.5/08/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App. 2d Cir.3/1/00), 754 So.2d 387. Even if an offense is legislatively designated as responsive by La. C. Cr. P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. La. C. Cr. P. art. 814(C). State v. Mitchell, supra; State v. Johnson, 30,078 (La.App. 2d Cir.12/10/97), 704 So.2d 1269, writ denied, 98-0382 (La.6/26/98), 719 So.2d 1054. Absent a contemporaneous objection, however, a defendant cannot complain if the jury returns a legislatively-approved responsive verdict, even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990); State v. Mitchell, supra.
The statute under which Caston was charged is La. R.S. 14:67. It reads:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
La. R.S. 14:68 states:
A. Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an immovable, according to the law pertaining to civil matters, is immaterial.
B. Whoever commits the crime of unauthorized use of a movable having a value of one thousand dollars or less shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both. Whoever commits the crime of unauthorized use of a movable having a value in excess of one thousand dollars shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than five years, or both.
Unauthorized use of a movable is distinguishable from theft in that in the former crime there is no intent to deprive the owner permanently of the movable. Both crimes have the same element that the thing of value must be taken "without ... consent, or by means of fraudulent conduct, practices or representations." To support these convictions, the state's evidence must show either that Caston used the funds from these bank accounts without the owners' consent or that she took *130 control of the funds by means of fraudulent conduct, practices, or representations.
For each check in question, the state questioned Gamble about the information shown on the copy of the face of the check as well as the information showing the endorsement and the checkbook stub. As pointed out during testimony, the information on the check stubs did not match the information on the checks and for many of the checks there were no check stubs. The defense counsel did not object to the admission of these pages as evidence that the checks were negotiated.
The state also introduced copies of a bank statement belonging to Caston and her husband. It shows that a check for $5,000.00 from Martinez and another check for $5,000.00 from MM were deposited into the account in March 2001.
Caston did not deny that she negotiated most of the checks in question, nor did she assert that the amounts shown on the face of the copies of the checks were incorrect. She testified about how and why she negotiated these checks. It was her testimony that she negotiated checks made out to her boss in large sums so that he would have cash with which to gamble. As to the management company checks, she alleged she was reimbursing herself for expenses related to the condo units. Thus, the only determination for the jury to make was whether or not to believe this testimony or to believe Gamble's testimony that she appropriated the funds for personal use without any authority to do so.
The jury returned a not guilty verdict to the count involving the client trust account. It returned responsive verdicts of unauthorized use of a movable valued over $1,000.00 on counts two and three. The state's star witness and the main victim of this crime, Gamble, frequently replied that he did not know answers to many key questions. However, he did testify that he had not authorized Caston to use the law office or management company funds.
The jury must have chosen to believe his testimony over that of his long-time secretary. Thus, his testimony that he did not authorize Caston to negotiate the checks payable to him or authorize the payment of the sums shown in the checks made out to her is adequate to show that all of the elements of the crimes of unauthorized use of a movable valued over $1,000.00 had been proven beyond a reasonable doubt. The state did not have to prove where the funds went or how Caston used the monies in question. Consequently, this assignment lacks merit.

Error During Jury Deliberations
Caston objected to the jury's request to see all checks and asserts that the trial court's allowing the jurors to see this written evidence was reversible error. She further argues that the trial court erred in failing to give further instructions on how the jury should consider the checks with respect to the other evidence presented during trial. She asserts this lack of guidance increased the likelihood that the jury would give undue weight to the submitted evidence, excluding other matters heard by the jury during trial.
The state argues that the defense did not request any special instructions when this evidence was allowed to be reviewed and that the trial court correctly found that the jury had a right to view these documents to determine the authenticity of the signatures. The state further argues that considering the verdicts, it was harmless error for the trial court to allow the jurors to see these checks.
La. C. Cr. P. art. 793 in pertinent part provides:
A. Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He *131 shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
The record shows that after the jury foreman made a written request to see all checks, the appellant's counsel objected citing the above provision. The trial court allowed S-1, S-2, S-3 and D-1 to be viewed by the jurors finding that the checks were not documents and that the physical examination of the checks was necessary since the defense had challenged the authenticity of the signature on the checks drawn on the trust account.
The record shows that the state actually opened up the question of the authenticity of the signature on the checks payable to the appellant. Gamble testified that his signature looked funny on two checks in the amount of $15,000.00 each.
Dicta found in State v. Perkins, 423 So.2d 1103 (La.1982), shows that an examination of documents like the copies of checks presented here could be allowed under certain circumstances. That court stated:
The general rule as expressed by C. Cr. P. 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. For example, a jury can examine a written statement to ascertain or compare the signature, or to see or feel it with regard to its actual existence. State v. Freetime, 303 So.2d 487, 489 (La.1974). The legislature has made an express choice in this instance, and this court must follow the explicit prohibition of article 793, of jury access to written evidence during the deliberations, except for the sole purpose of physical examination.
It appears that an inspection of the copies of these checks to review the signature of the maker as well as the endorsements allegedly made by Caston would be an allowable "physical examination" under the circumstances of this case.
While the facts in State v. Johnson, XXXX-XXXX (La.App. 4 Cir. 1/27/99), 726 So.2d 1126, writ denied, XXXX-XXXX (La.8/25/99), 747 So.2d 56, are distinguishable since that defendant did not object at trial and the jury had not first viewed the medical records in question from the jury box during trial, language in the case provides some guidance. That court stated:
We have not found any reported case that specifically holds that the harmless error doctrine applies and that a violation of Art. 793 constitutes harmless error. State v. McCully, 310 So.2d 833 (La.1975), reversed a conviction for possession of marijuana because the trial judge permitted a tape of a chief prosecution witness to be repeated to the jury. McCully explained that Art. 793 effectuates a legislative prohibition against "re-reading of recorded testimony," and against "jury re-examination of trial evidence," id. at 835. The Court held that the error was not harmless because it was a substantial violation of defendant's statutory right and was prejudicial.
Contrary to the language cited above, allowing this jury to review the exhibits which had copies of the front and backs of the numerous checks as well as pay stub information appears to be a harmless error under the circumstances. Caston testified *132 that she had negotiated the checks in question and thus, the information on the exhibits would not have influenced the jury's decision on that issue. As pointed out by the state, the review of the checks may have actually been favorable to the appellant since she was acquitted on count one and the jury returned a responsive verdict on counts two and three.
Allowing the jury to review the copy of the checks during its deliberation is a harmless error since the verdict does not seem to be attributable to the information gleaned from these exhibits.

Excessive Sentence
Caston argues that the trial court erred in ordering the two sentences to be served consecutively since she had no prior record. She asserts that the court acknowledged that the victim induced or facilitated the commission of the crime and that the imprisonment would entail excessive hardship on her and her family. Caston also complains that there was no PSI and that the sentence should be vacated so that the trial court can consider the factors of La. C. Cr. P. art. 894.1.
The state argues that the trial court clearly articulated the pertinent factors shown in La. C. Cr. P. art. 894.1 prior to sentencing Caston. It also asserts that as long as the trial court articulates its particular justification into the record, consecutive sentences (for convictions arising out of the same or similar transaction) are not necessarily excessive. It further argues that the crime extended over a period of time and involved different victims and different businesses and that the appellant benefited from the state's charging fewer counts in which several crimes were lumped together.
La. C. Cr. P. art. 883 states:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App. 2d Cir.11/01/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App. 2d Cir.04/05/00), 756 So.2d 1218, writ denied, 00-1572 (La.03/23/01), 787 So.2d 1010.
Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App. 2d Cir.03/05/03), 840 So.2d 675.
Among the factors to be considered are the defendant's criminal history, State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980) supra, State v. Jacobs, *133 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir.1986), writ denied, 496 So.2d 355 (La.1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1 Cir.1983), writ denied, 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); defendant's apparent disregard for the property of others, State v. Parker, 503 So.2d 643 (La.App. 4 Cir.1987); and the potential for defendant's rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983), State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987).
We do note that La.C.Cr.P. art. 883 does not specifically require the trial court state reasons justifying the imposition of a consecutive sentence when the crimes arise out of a single course of conduct. Rather, the history of the jurisprudence reveals that the requirement for articulating specific reasons for imposing a consecutive sentence is based on La. C. Cr. P. art. 894.1, which requires a sentencing court to "state for the record the considerations taken into account and the factual basis therefore in imposing sentence." State v. Franks, 373 So.2d 1307, 1308 (La.1979). Over time, the Louisiana Supreme Court has found that the failure to articulate reasons for sentence pursuant to Article 894.1 does not require a remand when the sentence imposed is not "apparently severe" and there is an adequate factual basis for the sentence contained in the record. State v. Robicheaux, 412 So.2d 1313, 1319 (La.1982). Therefore, it logically follows that the failure to articulate specific reasons for imposing a consecutive sentence also does not require a remand if the record provides an adequate factual basis to support a consecutive sentence.
However, we find that the consecutive sentences imposed on Caston are apparently severe. She received the maximum allowable term, five years, on each sentence, but the trial court suspended two of the years on each sentence. We find that the record contains inadequate reasons for the trial court's finding that the sentences should be served consecutively. The sentencing transcript reflects that the trial court considered that these convictions involved "multiple incidents for which separate sentences aren't going to be handed down because all of these cases were lumped together." However, the trial court also noted that imprisonment would be an "excessive hardship" upon Ms. Caston and her dependants. Ms. Caston was already cast in judgment in excess of $600,000 in the civil matter concerning the funds at issue in Martinez Management, Inc., v. Caston, 39,500 (La.App.2d Cir.4/13/05), 900 So.2d 301 and was ordered to pay restitution in the instant case. Consequently, this court views the running of these sentences consecutively as extremely severe for this offender who committed non-violent, white-collar crimes, and an abuse of the trial court's discretion. Therefore, we vacate the sentences on both counts and remand for resentencing consistent with this opinion.

Sentencing Error
Our finding that the sentence is excessive pretermits a discussion of any error concerning the probation.

Restitution
Caston presents four arguments under this assignment of error. The first argument is that the trial court did not make a determination regarding her ability to make restitution noting that there was no pre-sentence report and nothing presented *134 to the court concerning Ms. Caston's financial condition. She further asserts that she was not given an opportunity to contest the restitution order and that the trial court simply ordered restitution for the entire amounts alleged in the bill of information.
Next, Caston argues that the trial court used and applied the provisions of La. C. Cr. P. art. 883.2 retroactively "to an offense that began before" the effective date of the statute.
The third argument presented by Caston is that since La. C. Cr. P. art. 883.2 does not apply, the trial court erred in ordering both hard labor and an order of restitution.
Finally, she asserts that the provisions of La. C. Cr. P. art. 883.2 allow a court to increase the statutory maximum penalty for violating La. R.S. 14:68 and that this appellant was entitled to have the amount of restitution determined by the jury under the holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
The state's response to all of these arguments is that the statute is not being applied retroactively since "all but one of the occurrences on Count Three (3) and several of those on Count Two (2)" happened after the effective date of La. C. Cr. P. art. 883.2. The state then speculates that the trial court would not have suspended any portion of the sentences if the "trial judge had felt the victim (sic) would not receive restitution."
La. C. Cr. P. art. 883.2 provides:
In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
La. C. Cr. P. art. 895(A)(7) states:
A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
* * *
(7) Make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court;
* * *
La. C. Cr. P. art. 895.1 states in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
*135 The record shows that the trial court ordered Caston to pay restitution in both convictions, stating that the amounts were to be the amounts shown in the amended bill of information: $60,012.99 to Martinez Management, Inc., and $257,750.00 for the "law office account." The trial court further ordered that the restitution payments were to be paid upon release in the amount of $1,000.00 per month and that the appellant was to be given credit for funds received from "collections through other sources."
The record also shows that defense counsel filed a motion to reconsider sentence and the trial court held a hearing before ruling on the motion. This record has been supplemented with a transcript of that hearing. The issue regarding the retroactive application of La. C. Cr. P. art. 883.2 was not raised in the motion to reconsider. However, because this argument raises an illegal sentence issue, this court will consider the claim. Although at the sentencing hearing as well as the hearing on the motion to reconsider the sentence, both counsel for the state and Caston referenced other restitution provisions, it is clear from the trial court's written ruling that it used the provisions of La. C. Cr. P. art. 883.2.
Caston is correct in arguing that La. C. Cr. P. art. 883.2 was enacted after she began the offenses for which she was charged. The record shows that the state opted to change the charging instrument twice and lumped its various charges into three counts of theft, alleging that the taking took place over long periods of time. In count two of the amended bill of information, the time frame is February 16, 1998 to July 29, 2002. In count three, the dates are between April 8, 1997 and July 19, 2002.
Because this statute is relatively new, there have not been many reported cases on its applicability. However, the third circuit has ruled on two occasions that the statute should not be applied retroactively. In State v. Miller, 1999-950 (La.App. 3d Cir.2/2/00), 757 So.2d 744, that court stated:
In the 1999 Regular Session, the legislature enacted La.Code Crim.P. art. 883.2, which requires the trial court to order the payment of victim restitution in cases where the court finds the victim suffered an actual pecuniary loss or incurred costs in connection with the prosecution. Thus, the trial court is no longer required to suspend a defendant's sentence before it can impose restitution to the victim. We find, however, that newly enacted Article 883.2, which became effective August 15, 1999, does not apply in the present case. Article 883.2 increases the severity of the punishment to be imposed by requiring restitution to certain victims. Before the enactment of that article, the decision to order restitution was within the discretion of the trial court. Thus, we decline to apply Article 883.2 retroactively to offenses committed before its effective date. See State v. Loyd, 96-1805, p. 6 (La.2/13/97); 689 So.2d 1321, 1324 (stating that the Ex Post Facto Clause prohibits "increasing punishment after the commission of the crime") and State v. Bailey, 28,822 (La.App. 2d Cir.10/30/96); 682 So.2d 1271 (refusing to apply La.Code Crim. P. art. 893's prohibition of a suspended sentence for a first felony conviction of a crime of violence to offenses committed before its effective date).
See also State v. Leonard, 1999-800 (La.App. 3d Cir.2/2/00), 758 So.2d 238.
It is clear that this statute became effective on January 1, 2000, which is subsequent to the dates that Caston is alleged to have begun committing her acts, and any retroactive application of its penalty is improper.
*136 La. C. Cr. P. art. 883.2. adds the requirement of restitution as a penalty to all crimes committed if the victim suffers a monetary loss. Prior to the enactment of this statute, restitution could only be ordered as a condition of probation and thus, was not per se a part of the penalty for the crime. Thus, the trial court erred in ordering restitution using the provisions of La. C. Cr. P. art. 883.2.
We note that upon remand, if the trial court avails itself of the use of La.C.Cr.P. arts. 895 and 895.1, any order of restitution must be definitive. The court ordered Caston to pay restitution for both convictions in the exact sums listed as the amounts of the theft for counts two and three listed on the bill of information  $60,012.99 to Martinez Management, Inc., and $257,750.00 to the law firm. The first problem with doing this is that the testimony regarding the amount of the checks written on the Martinez Management, Inc., account only added up to $57,312.99, not $60,012.99.
At the sentencing hearing, the only person to testify about the loss was Gamble. He was unable to tell the court what his loss was. The record shows he testified that there was a civil judgment in the amount of "around six hundred and twenty-eight thousand dollars," but admitted that the judgment was being appealed.
He also testified that his malpractice insurance had paid $150,000.00 and ultimately testified "I don't know the total amount of my loss. I know it's very substantial, hundreds of thousands of dollars. But I don't know the total."
Under the provisions of La. C. Cr. P. arts. 895 and 895.1, any amount of restitution must be "a reasonable amount not to exceed the actual pecuniary loss to the victim in an amount certain."
Because this record does not support the trial court's finding of the amounts of restitution, the orders of restitution is vacated, and this matter is remanded to the trial court for it to determine the reasonable amounts of restitution under the provisions of La. C. Cr. P. art. 895.1 if applicable.

CONCLUSION
Based on the above, we find that the evidence is sufficient to support the responsive verdicts of two counts of unauthorized use of movables over $1,000.00. Therefore, the defendant's convictions are affirmed. However, finding that ordering the sentences to be served consecutively was excessive and an abuse of the trial court's discretion, we vacate the sentences and remand for resentencing consistent with this opinion. Further, the order of restitution under La. C. Cr. P. art. 883.2 is vacated, and the matter remanded for the trial court to determine what amount, if any, should be paid in restitution under the provisions of La. C. Cr. P. arts. 895 and 895.1 if applicable.
AFFIRMED IN PART. VACATED IN PART. AND REMANDED.