963 So.2d 497 (2007)
STATE of Louisiana, Appellee
v.
Bobby R. PARKER, Sr., Appellant.
No. 42,311-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
Rehearing Denied September 13, 2007.
*500 McGlynn, Glisson & Koch, by Karl J. Koch, Baton Rouge, for Appellant.
William R. Coenen, Jr., District Attorney, Penny Douciere, Assistant District Attorney for Appellee.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Bobby R. Parker, Sr., was convicted of three counts of indecent behavior with a juvenile, in violation of La. R.S. 14:81. He was sentenced on each *501 count to serve 7 years hard labor with 2 years suspended, to run consecutively with one another, for a total of 15 years. Defendant now appeals. For the reasons stated herein, we affirm Defendant's conviction and sentence.

FACTS
Defendant was charged by bill of information filed in December 2004, with three counts of indecent behavior with a juvenile, in violation of La. R.S. 14:81. The three offenses involved three female juveniles, hereinafter referred to as A.F.[1], 8 years old at the time of the offense, B.I., 7 years old at the time of the offense, and A.P., 12 years old at the time of the offense. All three offenses occurred at or around Defendant's home located near Woolen Lake. A.F. and B.I. were Defendant's step-granddaughters at the time the offenses occurred, and A.P. was Defendant's neighbor.
The State filed a notice of intent to use other crimes evidence of Defendant's improper behavior against his two step daughters-in-law, D.G. and C.W., and his daughter-in-law's sister, M.H. The trial court conducted a Prieur hearing to determine the admissibility of such evidence and ruled in favor of the State.
As stated, Defendant was convicted by a jury on all three charges. A pre-sentence investigation report was completed and he was sentenced on each count to serve 7 years hard labor with 2 years suspended, to run consecutively with one another, for a total of 15 years. Defendant filed a motion for reconsideration of sentence, which was denied without a hearing. This appeal ensued.

DISCUSSION
Assignment of Error Number Three (verbatim): The evidence presented at trial was insufficient to sustain a conviction; taking the evidence in the light most favorable to the state, no reasonable jury could have found the defendant's guilt beyond a reasonable doubt as to the charged offenses.
When issues are raised on appeal both as to the sufficiency of the evidence and one or more trial errors, the reviewing court first reviews the sufficiency claim. This is because the defendant may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if the evidence is constitutionally insufficient. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). This standard was legislatively adopted in La. C. Cr. P. art. 821 and applies to cases involving direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983). When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty *502 of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. It is always the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Lee, 32,272 (La.App. 2d Cir.8/18/99), 742 So.2d 651, writ denied, 99-2730 (La.3/17/00), 756 So.2d 326.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
La. R.S. 14:81(A) provides that indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of 17, where there is an age difference of greater than 2 years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.
Specific intent to commit the offense of indecent behavior with a juvenile need not be proven as a fact, but may be inferred from the circumstances and actions of the defendant. State v. Blanchard, 00-1147 (La.4/20/01), 786 So.2d 701.
In the case sub judice, Defendant argues that the testimony of the State's three witnesses was so internally inconsistent, and was otherwise shown to be unreliable through cross-examination, as to render belief in that testimony unreasonable. He urges that no reasonable jury would have convicted him on this testimony.
The State argues that it presented a solid case against Defendant based on testimony of the three victims and family members and that law enforcement was able to corroborate many aspects of the victims testimony. The State further argues that the testimony of the victims was consistent with one another and was accepted as credible by the jury. We agree.
B.I., the first victim, testified about an incident that had occurred at Defendant's house on Woolen Lake during its construction in 1999. She was only 7 years old at the time. She was spending the night at Defendant's house and was sleeping on the floor in sleeping bags with her cousin A.F. At this time, the interior walls were not complete with only the studs and framing in place. She testified that, at some point during the night, A.F. moved to where Defendant and J.P., his wife at the time, were sleeping. Later in the night, B.I. moved and laid down between Defendant and A.F. because she was scared. She further testified that Defendant lifted up her nightgown and started rubbing on her stomach, leg and in her vaginal area. She stated that she was scared at first and then pushed him away. She testified that a little while later, he pulled her night gown back up and continued the same behavior. She stated that she moved away from Defendant after she got tired of it and moved to the other side of A.F.
B.I. testified that she did not tell any adults about what happened, but she did tell A.F. the following day when they both went swimming. B.I. stated that, when she asked A.F. if Defendant had done anything *503 to her, A.F. stated that Defendant had "pulled down her underwear and rubbed on her."
B.I. also recounted a second incident that occurred a few weeks to a month after the first incident in a now completed guest bedroom at Defendant's house. She testified that, Defendant came in naked while she was sleeping in a guest bedroom with A.F. and another child. He lifted up her night gown. She stated that she kicked him away, but he held her arms and legs down while he pulled down her underwear and started rubbing between her legs and inserted his finger inside of her. B.I. testified that A.F. woke up and tried to push Defendant off of her, but Defendant pushed A.F. back, causing A.F. to fall off the bed. Shortly thereafter, B.I. testified that Defendant left the room after giving her a warning not to speak. B.I. stated that she told her adult foster sister, J.B., about the incident almost a year later when she turned 8 years old.
J.B. corroborated B.I.'s testimony. She testified that, in July 2000, Defendant's wife came by offering to take B.I., A.F., and another child to her house for the weekend. She testified that, when she told B.I. about it, B.I. stated that she did not want to go, became very upset and burst into tears. She stated that B.I. told her that "Pappao Bobby did bad things to me." J.B. testified that she had never met Defendant or knew anything about him.
A.F., the second victim and Defendant's wife's granddaughter, testified about a visit to her grandmother's in August or September 1999 when she was 8 years old. She was there with her grandmother, Defendant, B.I. and her little brother. She testified that, at some point during the night while she was sleeping, Defendant woke her up and asked if she and her brother wanted to sleep near him. She testified that she agreed and moved to a spot on the floor next to Defendant. She said that Defendant then lifted up her nightgown, pulled down her underwear and started rubbing her bottom with his hand. She further testified that she got up and moved away from Defendant and then B.I. took her spot next to Defendant.
A.F. testified that she did not report this incident to an adult, but did discuss the incident with B.I. the following day. She also testified that she recalled the second incident that occurred in 2000. A.F. confirmed that she spent the night at Defendant's house and slept in an extra bedroom with B.I. and another child. She stated that she woke up and saw Defendant on top of B.I. She testified that, when she tried to push him off of B.I., Defendant pushed her off the bed. She also testified that there were no other men in the house and that Defendant was naked. She said that it appeared to her that Defendant was trying to have sex with B.I. She said that she told her father about the incident after her father confronted her after learning about what happened with B.I. and Defendant.
J.F., A.F.'s father, testified about a confrontation he had with his daughter in July 2000 regarding an incident between B.I. and Defendant. He stated that A.F. told him that Defendant had fondled her by putting his hand on her behind. He testified that, when he called Defendant about the matter, Defendant told him that the allegations were false. J.F. took A.F. to the sheriff's office that same day and filed charges. He also testified that, after this information was revealed to him, A.F. never went around Defendant again.
A.P., the third victim, testified that she lived next door to Defendant and would spend the night at his house from time-to-time. She stated that, in the summer of 2004, Defendant would sometimes pick her up from the school bus stop after summer *504 school. On occasion, when Defendant was alone when he picked her up, she said that he would touch her chest, put his hands between her legs and insert his finger into her vagina. She stated that this occurred most of the times when Defendant picked her up by himself.
A.P. also testified that she would sometimes spend the night at Defendant's house, and Defendant would get up at night and put his finger inside of her. She also told about an incident that occurred on a boat and related that, while she and Defendant were riding on the boat alone, Defendant would try to put his hand under her bathing suit bottoms. She also testified that Defendant has also abused her in a shed. A.P. said that she told her mother and an investigator with the sheriff's department about the incident.
S.P., the mother of A.P., testified that her daughter was slower than other children her age and that she had attended summer school in July 2004. She stated that either Defendant or his wife would sometimes pick A.P. up from the bus stop after summer school and bring her home. She testified that, in July 2004, Defendant took A.P. on his boat and she became suspicious after they were gone for an hour and a half. S.P. said that, when she questioned her daughter A.P. about it, A.P. stated that Defendant had been fooling with her "boobs" and private area. S.P. testified that, when she asked A.P. how many times it had happened, A.P. responded, "It's been happening a lot of times." S.P. stated that she then took A.P. to the sheriff's department.
Officer Terry Thompson testified that he received a call on July 16, 2000, concerning a complaint about Defendant. He testified that he met with A.F., her father (J.F.), B.I. and Defendant's wife (J.P.) on that same afternoon and took the statements from A.F. and B.I. who told him that they had been molested by Defendant. He testified that he then contacted Defendant and asked him to come to his office concerning the allegations. Defendant agreed and Officer Thompson took a recorded statement from Defendant on July 19, 2000. In the statement, Defendant acknowledged going naked into the girls' room, thereby corroborating the victims' testimony. After Defendant gave the statement, Officer Thompson testified that he set the case aside because of an overwhelming caseload, but stated that he never closed it. Defendant was not arrested and no further action was taken by law enforcement until Defendant's arrest for his offenses against A.P. four years later.
In viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime of indecent behavior with a juvenile were established beyond a reasonable doubt. The testimony of the three victims was consistent and corroborated by family members and by each other. Moreover, despite their youth, the witnesses were accepted as credible by the jury.
On cross-examination, the defense attempted to discredit the testimony of A.P.'s mother and A.F.'s father. The defense presented testimony by several Woolen Lake residents that A.P.'s mother had offered to accept money in exchange for the dismissal of the charges. The defense also tried to show that A.F.'s father was angry with Defendant over a previous deal with a truck. The defense, however, could not establish that the conversations with A.P.'s mother ever took place or that A.F.'s father had a pre-existing grievance against Defendant. Defendant was also unable to present any plausible evidence that would lead the jury to conclude that the three juveniles fabricated their testimony to help Defendant's wife in her divorce *505 proceedings against Defendant, a recurring theme on cross-examination. We find this evidence to be sufficient to sustain the convictions.
Assignment of Error Number One (verbatim): The trial court erred by admitting evidence of uncharged, alleged sexual misbehavior by the defendant involving adult women; such evidence was inadmissible under either Louisiana Code of Evidence articles 404(b) or 412.2, and the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.
The State notified Defendant prior to trial of its intent to introduce evidence of prior uncharged bad acts. The notice indicated that such evidence was admissible under La. C.E. art. 404(b) and/or 412.2. The evidence was to be the testimony from two of Defendant's adult step-daughters-in-law, D.G. and C.W., and an adult female neighbor, M.H. The notice indicated that the women would testify concerning sexual overtures and comments made by Defendant toward the women and lewd sexual gestures toward them, and, in the case of M.H., inappropriate touching of her breasts and between her legs. The stated relevance of the evidence was to show "the defendant's pattern and history of lewd and lascivious conduct toward females," a "pattern in the defendant's behavior toward women of all ages" and "the defendant's lustful disposition." A hearing was held and, in a brief ruling, the trial court opined that the evidence was admissible under article 412.2.
At trial, D.G., the first adult female witness, testified that Defendant exposed himself to her twice, once near a shed located behind D.G.'s home, which was on Defendant's property, and once when he got out of the shower and was covered by only a towel; that he made sexual tongue gestures toward her; that he made suggestive sexual comments to her under his breath; and that Defendant offered her $50 to see her "tits" because his wife had undergone breast cancer surgery and did not have "pretty" breasts.
Next, C.W., the second adult female witness, testified that Defendant made sexual comments to her as he would walk by her and that he looked through an air vent in her bathroom door and watched while she bathed.
Finally, M.H., the third adult female witness, testified that Defendant walked by her and grabbed her between the legs and grabbed her breasts from behind her. He made comments to her about her breasts, came into the bathroom while she was in the shower and, once, followed her into a bedroom, pushed her down on the bed and kissed and touched her.
Defendant argues that none of the uncharged misconduct evidence should have been received pursuant to article 412.2 in that it involved only adult women. Defendant further argues that the types of evidence that can be received under article 412.2 are divided into two parallel categories-evidence of the accused's commission of "another crime, wrong, or act involving sexually assaultive behavior" and "acts which indicate a lustful disposition toward children." Defendant asserts that, because he was not charged with an offense that includes any element of sexually assaultive behavior, that portion of article 412.2 which allows for the admission of "another crime, wrong, or act involving sexually assaultive behavior" has no application in the case. Moreover, Defendant asserts that all of the uncharged misconduct evidence dealt with alleged misconduct with adult women and did not involve any "acts which indicate a lustful disposition toward children."
*506 The State argues that the other crimes evidence of Defendant's sexually assaultive behavior toward his two step daughters-in-law and a daughter-in-law's sister was properly admitted under article 412.2. The State further argues that the offense of indecent behavior with a juvenile is a crime which involves sexually assaultive behavior and that the other crimes evidence was relevant in this case not only to counter Defendant's theory of the case, but also to prove specific intent and absence of mistake or accident. The State submits, alternatively, that, if the court finds that the evidence was improperly admitted, such error was harmless and the conviction should, nevertheless, be affirmed.
The admission of character evidence is governed, generally, by La. C.E. art. 404, which provides, in pertinent part:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The legislature has provided a more specific rule for offenses of a sexual nature involving minors in La. C.E. art. 412.2, which provides:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.
In State v. Miller, 98-0301 (La.09/09/98), 718 So.2d 960, the supreme court discussed the additional concerns in admitting other crimes evidence:
Several other statutory and jurisprudential rules also play a role in determining the admissibility of such evidence. First, one of the factors listed in Article 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." State v. Jackson, 625 So.2d 146, 149 (La.1993). Second, the state is required to prove the defendant committed these other acts by clear and convincing evidence. Id.; State v. Davis, 449 So.2d 466 (La. 1984). Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, *507 confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Finally, the requirements set forth in State v. Prieur, 277 So.2d 126 (La.1973) must be met. Thereunder, the state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The state must show the evidence is neither repetitive nor cumulative, and is not being introduced to show the defendant is of bad character. Further, the court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court must also charge the jury at the close of the trial that the other crimes evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or any offense responsive to it.
Article 412.2 has been consistently applied by this court to allow the introduction of evidence of prior uncharged misconduct in cases where a defendant has engaged in sexually inappropriate behavior with minor individuals similar to the charged misconduct. See State v. Williams, 41,731 (La.App. 2d Cir.1/24/07), 950 So.2d 126; State v. Wallace, 41,720 (La.App. 2d Cir.1/24/07), 949 So.2d 556, State v. Humphries, 40,810 (La.App. 2d Cir.4/12/06), 927 So.2d 650, writ denied, 06-1472 (La.12/15/06), 944 So.2d 1284. Generally, a trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Blackwell, 30,281 (La. App. 2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 So.2d 755. Since the prior alleged misconduct in the case sub judice concerns actions of Defendant with adult women only, we conclude that the trial court abused its discretion in admitting the testimony of the three adult female witnesses D.G., C.W. and M.H.
We further conclude, however, that the erroneous admission of the evidence was harmless and, therefore, does not constitute reversible error. The introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis on appeal. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; State v. Jackson, 33,837 (La. App. 2d Cir.9/27/00), 768 So.2d 767, writ denied, 00-3078 (La.11/2/01), 800 So.2d 864; State v. Ingram, 29,172 (La.App. 2d Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505. Trial error is harmless where the verdict rendered is "surely unattributable to the error." Id.
Defendant argues that the testimony of the adult female witnesses and the district attorney's statements to the jury urging that his sexual misconduct toward women of all ages prejudiced the jury to the extent that his convictions must be vacated. We disagree. We credit the discretion of the jury in discerning and weighing the testimony of the three minor victims in this case. As previously discussed herein, the testimony of the victims in this case was reasonable, consistent and sufficient to sustain the convictions of Defendant. The verdict in this case is not attributable to the erroneous admission of the testimony that Defendant made inappropriate sexual comments and gestures toward three adult females; and, therefore, such error was harmless.
*508 Assignment of Error Number Two (verbatim): The trial court erred by refusing to allow the defendant to introduce evidence to rebut its claim that the defendant engaged in a pattern of conduct showing that he had "no regard for convention and proper morals" with women, specifically evidence showing that multiple other younger and older women were repeatedly in his presence and that he did not act improperly on those occasions; regardless of whether such evidence would be admissible otherwise, the defendant's constitutional right to present a defense was violated by excluding the described evidence when it was offered in response to the state's allegations regarding the defendant's pattern of behavior.
Defendant sought to introduce testimony of several friends of his from the community whose proffered testimony indicates that the individuals had observed Defendant often interacting with both adult and minor children and had never witnessed any inappropriate behavior on the part of Defendant toward women and girls. This evidence was to rebut or counter the article 412.2 testimony discussed in the previous assignment. Defendant argues that the only way to rebut the alleged pattern in his behavior was by proving that there was no such pattern through the testimony of other witnesses who observed his behavior in the same or similar circumstances.
La. C.E. art. 404 generally disallows admission of evidence of a person's character or a trait of his character for the purpose of proving he acted in conformity therewith on a particular occasion. As a limited exception to the general rule, however, article 404(A)(1) allows admission of evidence of a pertinent trait of an accused's character, such as a moral quality, offered by him or by the prosecution to rebut the character evidence, provided that such evidence shall be restricted to showing those moral qualities pertinent to the charged crime and cannot destroy conclusive evidence of guilt. For this exception to apply, the requirements of La. C.E. article 405 also must be met. Generally, article 405 allows a party to prove a person's character with testimony as to "general reputation" only, and a particular foundation is required. La. C.E. art. 405(A) & (C).
The record reflects that the character evidence Defendant sought to introduce was by specific instances of alleged good conduct and not a pertinent trait of his character provable by testimony as to general reputation only. Thus, the testimony sought to be introduced was inadmissible under La. C.E. art. 404 A(1). The testimony was, therefore, properly excluded and this assignment is without merit.
Assignment of Error Number Four (verbatim): The trial court erred in sentencing the defendant, and then in denying the defendant's motion for reconsideration of sentence, by imposing consecutive rather than concurrent sentences for the offenses, by failing to set forth its reasons for consecutive sentences, and by imposing a sentence which was excessive when taken as a whole.
Defendant argues that the record in this case does not support the imposition of consecutive sentences resulting in a total sentence of 15 years. Defendant asserts that La. C. Cr. P. art. 883 provides for the imposition of concurrent sentences where a defendant is convicted of two or more offenses based on the same act or transaction or constituting parts of a common scheme or plan.
La. C. Cr. P. art. 883 provides that:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of *509 imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run consecutively.
Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App. 2d Cir.3/5/03), 840 So.2d 675.
It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Coates, 27,287 (La.App. 2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365; State v. George, 26,867 (La.App. 2d Cir.4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855. Concurrent sentences arising out of a single cause of conduct are not mandatory. State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 637 So.2d 476 (La.1994). Further, consecutive sentences under those circumstances are not necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). All factors are to be considered. State v. Ortego, supra. These include a defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims and whether the defendant constitutes an unusual risk of danger to the public. State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir. 1986); State v. Adams, 493 So.2d 835 (La. App. 2d Cir.1986), writ denied, 496 So.2d 355 (La.1986); State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983); State v. Jett, 419 So.2d 844 (La.1982). The jurisprudence, however, requires that, when consecutive sentences are imposed, the court "shall state the factors considered and its reasons for the consecutive terms." State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993).
In reviewing a sentence for excessiveness, this court must first determine whether there has been compliance with La. C. Cr. P. art. 894.1 in the imposition of sentence. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. State v. Price, 40,437 (La.App. 2d Cir. 1/25/06), 920 So.2d 389. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
A second inquiry is made to determine whether the sentence is too severe given the circumstances of the case and the defendant's background. If it is a *510 needless imposition of pain and suffering and is grossly disproportionate to the seriousness of the offense so as to shock one's sense of justice, the sentence is considered unconstitutionally excessive as violative of La. Const. art. 1, § 20. Both inquiries must be made to determine if the sentence imposed is proper. State v. Lobato, 603 So.2d 739 (La.1992).
A trial court has broad discretion to sentence within the statutory limits. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
Whoever commits the crime of indecent behavior with juveniles shall be fined not more than $5,000 or imprisoned with or without hard labor for not more than 7 years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of C. Cr. P. art. 893. La. R.S. 14:81(C). Herein, Defendant was sentenced on each count to serve 7 years hard labor with 2 years suspended, to run consecutively with one another, for a total of 15 years.
As previously mentioned, although La. C. Cr. P. art. 883 does not specifically require that the trial court state reasons justifying the imposition of a consecutive sentence when the crimes arise out of a single course of conduct, the history of the jurisprudence reveals that the requirement for articulating specific reasons for imposing a consecutive sentence is based on La. C. Cr. P. art. 894.1. State v. Franks, 373 So.2d 1307 (La.1979). Over time, however, the Louisiana Supreme Court has found that the failure to articulate reasons for sentence pursuant to Article 894.1 does not require a remand when the sentence imposed is not "apparently severe" and there is an adequate factual basis for the sentence contained in the record. State v. Robicheaux, 412 So.2d 1313 (La.1982). It logically follows, therefore, that the failure to articulate specific reasons for imposing a consecutive sentence also does not require a remand if the record provides an adequate factual basis to support a consecutive sentence. State v. Caston, 40,093 (La.App. 2d Cir.10/26/05), 914 So.2d 122; State v. Hampton, 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57 and 04-2380 (La.6/3/05), 903 So.2d 452.
In the instant case, the trial court did not expressly state its reasons for the imposition of consecutive sentences. After carefully weighing the evidence presented at trial and the pre-sentence investigation report, the trial court did state the considerations taken into account and the factual basis for imposition of the sentence in accordance with La. C. Cr. P. art. 894.1.
In sentencing Defendant, the trial court noted that Defendant was the step-grandfather of two of the victims and an adult neighbor to the other victim. Two of the victims are still in therapy, and the victim impact statement indicates that the victims have fears, nightmares and have suffered emotionally from this ordeal. The trial court also stated that there was great harm caused to the three minor victims, that they did not deserve what had happened to them and that they have been denied the right to grow up innocent. Specifically, the court noted that Defendant threatened one of the victims and two of the victims were still in therapy. Finally, the court stated that these events will *511 scar the victims for the remainder of their lives. Based upon the record and the sentencing transcript, we, therefore, conclude that there were adequate reasons for the trial court's finding that the sentences should be served consecutively.
Although Defendant is a first-felony offender with a steady work history and some support in his community, the sentences are not grossly disproportionate to the severity of the offenses and do not shock the sense of justice. We find that the consecutive sentences imposed are not excessive.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant, Bobby R. Parker, Sr., are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, PEATROSS and MOORE, JJ.
Rehearing denied.
MOORE, J., would grant rehearing.
NOTES
[1] The initials of the victims are used because of confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W). Also for confidentiality, we have used the initials of other witnesses, including his step daughters-in-law, who testified at trial.