408 So.2d 1319 (1982)
STATE of Louisiana
v.
James DUNN.
No. 81-K-2132.
Supreme Court of Louisiana.
January 25, 1982.
*1320 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Julie E. Cullen, Asst. Attys. Gen., Leon A. Picou, Jr., Dist. Atty., for plaintiff-relator.
Wilson R. Ramshur, St. Francisville, for defendant-respondent.
DIXON, Chief Justice.
Defendant James Dunn was indicted by the West Feliciana Parish Grand Jury for a murder committed while he was an inmate at the Louisiana State Penitentiary. He entered a plea of guilty without capital punishment. In May, 1981 defendant filed an application for post-conviction relief based on the allegation that his 1964 plea was involuntary. On July 31, 1981, following an evidentiary hearing, the trial judge ordered the defendant's conviction annulled and set aside and granted the state the delays allowed by law to retry the defendant. We granted the state's application for certiorari to review that judgment.
Defendant was represented by court appointed counsel on the murder charge. On the morning set for trial, defendant withdrew his initial plea of not guilty and not guilty by reason of insanity and entered a plea of guilty without capital punishment. The trial judge accepted the plea and sentenced defendant to life imprisonment.
In his application for post-conviction relief, one of defendant's contentions was that his plea was based on an understanding that he would be released after serving ten years and six months of his life sentence, but that the state failed to honor the plea bargain.
Testimony at the evidentiary hearing revealed that at the time defendant entered his plea, it was common knowledge that life imprisonment generally meant ten years and six months with good behavior, and that life sentences were submitted by the Department of Corrections to the pardon board for consideration with no action needed by the inmate, and that more often than not the Governor approved the pardon board's recommendations. John Rarick, the then presiding judge, testified that although he did not make the plea bargain he probably admonished the defendant that with good behavior life was ten years and six months, and that if he (defendant) maintained good behavior and the matter came before the pardon board, he, as a member, would vote to recommend that defendant's sentence be commuted. Additionally, the attorney who represented defendant on the murder charge testified that he advised defendant that "10-6" was not guaranteed, but based on the history of the policy, he felt it was more likely than not that defendant would serve only ten years and six months of a life sentence.
Following the evidentiary hearing, the trial judge annulled and set aside defendant's conviction, concluding that defendant's plea was involuntary because it was influenced to a significant degree by defendant's expectation that he would serve only ten years and six months of his life sentence.
*1321 The state argues that the conviction should not have been set aside, as it made no guarantee at the time defendant entered his guilty plea that he would serve only ten years and six months, and, consequently, defendant was neither misled nor deceived into pleading guilty. Additionally, the state argues that defendant's plea was substantially influenced by his desire to escape the death penalty.
We must consider whether, under all the circumstances, the guilty plea was entered knowingly and voluntarily. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Jones, 398 So.2d 1049 (La.1981). The voluntariness of a guilty plea must be determined according to factors existing at the time it was entered. Generally, a guilty plea induced by promises and made without understanding of the consequences will not sustain a conviction. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); State v. Jones, supra. The guilty plea, however, will be ruled effective when entered "voluntarily after proper advice and with full understanding of the consequences." Machibroda v. United States, supra, 368 U.S. at 493, 82 S.Ct. at 513, 7 L.Ed.2d at 478.
In the present case, defendant did not allege that his guilty plea was entered in exchange for a particular sentence, only that he had an understanding that he would serve only ten years and six months of a life sentence. This expectation alone, however, will not undermine the voluntariness of defendant's guilty plea. On the morning set for trial, defendant withdrew his initial plea and entered a plea of guilty without capital punishment. His attorney testified that defendant was aware of the consequences of being tried and convicted of murder. He was aware of what the lesser crimes were and the penalties therefor. Nevertheless, he chose to plead guilty without capital punishment knowing that he would receive a life sentence. These facts are undisputed by defendant. He understood that commutation of his sentence was not guaranteed, but that it was more probable than not if he maintained good behavior. When asked at the evidentiary hearing whether he was told that life meant "10-6," defendant responded, "I got that impression." The record clearly shows, therefore, that his guilty plea was not induced by the state; he was not promised anything in exchange for his plea. Defendant entered his plea based on a rational knowledge of the alternatives that were available to him. He was aware of the relevant circumstances and likely consequences of his plea, including the fact that commutation of his sentence might well rest on his good behavior while in prison. We think, under these circumstances, defendant knowingly and voluntarily entered his guilty plea.
Defendant argues in brief that the repeal of R.S. 15:571.7 deprived him of the benefit of receiving automatic consideration for commutation of sentence.
At the time of defendant's plea, the usual procedure, with respect to the inmate who was sentenced to life and so conducted himself as to merit the approval of the superintendent of the penitentiary, was to have his case automatically forwarded for consideration of commutation of sentence after serving ten years and six months. This policy was permitted in part by R.S. 15:571.7, which provided:
"Whenever a prisoner who has been convicted of a crime and sentenced to imprisonment for life, so conducts himself as to merit the approval of the superintendent of the state penitentiary he may apply for a commutation of his sentence and the application, upon approval of the superintendent, shall be forwarded to the governor. The governor may commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had or any two of them. No commutation under this Section shall reduce the *1322 period of incarceration to less than ten years and six months." (Emphasis added).
R.S. 15:571.7 was repealed by Act 490 of 1979. The repealed statute did not, however, provide for automatic consideration of commutation of life sentences by the governor. Moreover, this practice by the Department of Corrections was mandated neither by statute nor the Constitution, and therefore never acquired the effect of law. R.S. 15:571.7 created a statutory right that permitted prisoners to apply for commutation of their life sentences and provided the procedure therefor. Defendant may still exercise that right under the rules established by the Board of Pardons[1] pursuant to R.S. 15:572, et seq. See Rules of the Department of Corrections on Board of Pardons, 5 La.Reg. 345 (1979).
We conclude, therefore, that defendant knowingly and voluntarily entered his guilty plea, and the repeal of R.S. 15:571.7 has not operated to deprive defendant of any statutory or constitutional right.
For these reasons, the judgment of the trial court is reversed and the conviction is reinstated.
NOTES
[1] Defendant states that he has applied for commutation thirteen times and has been approved by the pardon board twice, but the Governors have not signed the pardons.