786 So.2d 701 (2001)
STATE of Louisiana
v.
Mark Joseph BLANCHARD.
No. 2000-K-1147.
Supreme Court of Louisiana.
April 20, 2001.
*702 Richard P. Ieyoub, Attorney General, Earl B. Taylor, District Attorney, Gary C. Tromblay, Houma, Counsel for Applicant.
Allen B. Rozas, Mamou, Counsel for Respondent.
PER CURIAM:[*]
We granted the state's application in the present case to determine whether the court of appeal erred in setting aside as an abuse of discretion a ruling by the trial judge that respondent could not withdraw his "best interest" pleas, see North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), on three counts of indecent behavior with juveniles in violation of La.R.S. 14:81. Our independent review of the record reveals no misuse by the trial court of its broad discretion in ruling on a motion to withdraw a guilty plea made before sentencing. Accordingly, we reverse and remand this case to the court of appeal for consideration of respondent's remaining assignments of error pretermitted on original appeal.
The state initially charged respondent in a single grand jury indictment with two counts of contributing to the delinquency of a minor, La.R.S. 14:92, two counts of indecent behavior with a juvenile, and one count of sexual battery in violation of La. R.S. 14:43.1. The crimes involved two juvenile girls, M.H. and M.B.B., who attended the same high school where respondent worked as an athletic coach, and took place on the same day after respondent allegedly engaged the victims in a game of strip *703 poker at his home. The state obtained a separate grand jury indictment under the same docket number charging respondent with an unrelated sexual battery committed on F.K., another juvenile girl. The state subsequently gave respondent notice that it would use the F.K. incident as other crimes evidence under La.C.E. art. 404(B), see State v. Prieur, 277 So.2d 126, 130 (La.1973), at the trial of the counts involving M.H. and M.B.B.
Trial of respondent on two counts of indecent behavior with a juvenile and one count of sexual battery began with jury selection on Monday, December 7, 1998. The court then recessed trial until the following Wednesday. On the morning of December 9, 1998, F.K., whose whereabouts had been discovered by the state only hours before trial was set to resume, appeared in court to testify on the state's Prieur notice. After hearing F.K.'s testimony, and entertaining argument on the motion, the court deferred ruling on the admissibility of the other crimes evidence until it considered the testimony of M.H. and M.B.B. during trial. The state therefore agreed not to mention the F.K. incident in its opening remarks to the jury. At the close of this hearing conducted out of the jurors' presence, respondent conferred with counsel and subsequently entered his Alford pleas on three counts of indecent behavior with a juvenile, the third count reduced by the state from an original charge of sexual battery involving M.B.B. The record contains no disposition of the counts charging contributing to the delinquency of a minor.
Respondent subsequently moved to withdraw his pleas, alleging that a variety of factors had combined to undercut the voluntariness of his decision to forego trial. After conducting a hearing at which respondent, defense counsel and the prosecutor testified, the court denied the motion and sentenced respondent to serve six years imprisonment at hard labor on one count. On the remaining counts, the court sentenced respondent to concurrent seven-year terms of imprisonment, suspended, with consecutive five-year probationary terms. Among the conditions imposed on respondent's probationary terms is the requirement that he register and provide notice of his sex offender status according to law. La.C.Cr.P. art. 895(H); see also La.R.S. 15:542.
On appeal, the Third Circuit reversed upon finding that the trial court abused its discretion in denying respondent's motion to withdraw his pleas. State v. Blanchard, 99-1076 (La.App. 3rd Cir.3/22/00), ___ So.2d ___ (unpub'd). The court of appeal focused on three factors. First, the trial court had failed to mention the sex offender registration and notice provisions of La.R.S. 15:542 and La.C.Cr.P. art. 895(H) during the plea colloquy. Blanchard, 99-1076 at 6, ___ So.2d at ___. Respondent's motion to withdraw the pleas alleged that he first learned of the reporting requirements from the probation officer who interviewed him as part of a presentence investigation ordered by the court. The court of appeal considered this factor critical in light of our decision in State v. Calhoun, 96-0786, p. 9 (La.5/20/97), 694 So.2d 909, 914, in which we found that a similar failing by the trial judge constituted "a factor that undercut[] the voluntariness of that plea." Second, in light of the testimony presented by respondent and defense counsel at the hearing on the motion to withdraw the pleas, the court of appeal deemed the trial court's decision to defer ruling on the admissibility of F.K.'s testimony a coercive factor which also tended to undercut the voluntariness of respondent's pleas. Id., at 7. Finally, the court of appeal took note of the admission of defense counsel at the hearing that his acquaintanceship with members of both *704 victims' families had made him somewhat apprehensive about his forthcoming crossexamination of the victims. The court of appeal concluded that "[a] `sense' or as in this case, knowledge that defense counsel is not comfortable about cross-examination of one or more witnesses is a serious source of uncertainty for a defendant and must be said to be a serious factor in mitigating against voluntariness." Blanchard, 99-1076 at 9.
La.C.Cr.P. art. 559 provides that a trial judge "may permit a plea of guilty to be withdrawn at any time before sentence." The court possesses broad discretion in this regard but we have repeatedly emphasized that "this discretion cannot be exercised arbitrarily, and abuse of discretion can be corrected on appeal." Calhoun, 96-0786 at 6, 694 So.2d at 912; see also, State v. Jenkins, 419 So.2d 463, 466 (La.1982); State v. Compton, 367 So.2d 844, 847 (La.1979); State v. Baudoin, 334 So.2d 186, 188 (La.1976). However, a trial court does not arbitrarily abuse its discretion in denying a motion to withdraw a guilty plea made by a defendant who merely anticipates that he will receive a sentence greater than he had hoped for, State v. Deakle, 372 So.2d 1221, 1222 (La. 1979), or who alleges that he entered the plea solely to limit his sentencing exposure. Compton, 367 So.2d at 847.
In the present case, we find no arbitrariness in the trial judge's rejection of those factors deemed by the court of appeal critical to the defendant's motion to withdraw his pleas. With regard to the trial court's failure to address Louisiana' sex offender registration and notice provisions at the time respondent entered his pleas, we made our observation as to the importance of a similar failing in Calhoun in the context of testimony by the petitioner at the hearing on his pro se motion to withdraw his guilty plea that he had "learned of the registration requirements only after he had entered his guilty pleas and, then, only after someone had informed his wife of the sex offender registration laws." Calhoun, 96-0786 at 4, 694 So.2d at 912. However, we cautioned in Calhoun that "[t]oday, we conclude only that the district court's failure to timely notify a defendant of the registration requirements is a factor that can undercut the voluntary nature of a guilty plea...." Id., 96-0786 at 9, n. 6, 694 So.2d at 914.
In the present case, and despite the allegations in the written motion to withdraw, the testimony of defense counsel and respondent at the evidentiary hearing made clear that respondent was well aware of the sex offender notice and registration laws before he entered his pleas and that he had sought a disposition of the case by which he could avoid the reporting requirements altogether. Respondent testified that he would not have entered his pleas if he had known with certainty that he would have to comply with the registration law. Nevertheless, on the basis of defense counsel's explanation that by entering "best interest" pleas he "wasn't really pleading guilty or wasn't really pleading innocent," respondent had "assumed that I no longer would have to report." However, respondent did not attribute that assumption to any representations made by the trial court, the prosecutor, or by defense counsel. In fact, defense counsel testified that he informed respondent that he would have to register if he pleaded guilty and it appeared to counsel that respondent, who was a college graduate, had understood the consequences of a proceeding which would end in convictions for sexual offenses. It appears that the decision to enter "best interest" pleas was to accommodate respondent's steadfast claims of innocence and not to shelter *705 him (if at all possible) from the notice and registration requirements of the law. Although it may have arisen from a misunderstanding with counsel on this point, respondent's unsupported belief, hope, or expectation of avoiding the sex offender notice and registration requirements, of which he was generally aware, did not provide a basis for withdrawal of a guilty plea. See State v. Lockwood, 399 So.2d 190, 192-93 (La.1981); State v. Dunn, 408 So.2d 1319, 1321 (La.1982).
With regard to the state's notice of its intent to introduce the testimony of F.K. at trial, testimony at the hearing established that despite the state's notice in the week before jury selection began that it would seek to introduce her testimony under La.C.E. art. 404(B), neither defense counsel nor respondent believed that the state could find the witness and that they would have to defend against that charge as well as the crimes involving B.H. and M.B.B. However, the district attorney's investigator fortuitously located F.K. at the last moment, and she appeared in court to testify, outside the presence of the jury, that respondent had touched her inappropriately on one occasion and made suggestive comments to her on another. In argument on its motion, the state informed the trial court that "[t]here was a bathing incident involving one of these girls [B.H. and M.B.B.]" and that the evidence provided by F.K. "would be admissible to show the absence of mistake.... an intent to molest, fondle and touch young girls on the part of this defendant...." Because the crime of indecent behavior with a juvenile requires proof of specific intent, La.R.S. 14:81, and sexual battery requires proof that the proscribed act was intentional, La.R.S. 14:43.1, the state had articulated a legitimate rationale for introducing F.K.'s testimony to allay any concern jurors might have had that respondent's conduct, even if it had occurred, may have been accidental or inadvertent. See State v. Miller, 98-0301, pp. 11-12 (La.9/9/98), 718 So.2d 960, 966-67.
Nevertheless, although pressed by defense counsel for an immediate ruling, the trial judge deferred his decision because "the only way this thing can be handled is I've got to hear the other evidence before I can determine if this is relevant or not." Although preferable, a pretrial resolution of the issue "is not always required." State v. McDermitt, 406 So.2d 195, 201 (La.1981) (citations omitted); see United States v. Kelley, 120 F.R.D. 103, 109 (E.D.Wis.1988) ("Notwithstanding the defendant's professed desire to resolve these evidentiary matters [concerning other criminal acts] by motions in limine, this issue of admissibility of evidence can be more appropriately raised at trial where the findings of relevance and probative value versus prejudice are better addressed."); State v. Schmidt, 97-0249, p. 7 (La.App. 3rd Cir.7/29/97), 699 So.2d 448, 452 ("The finding required for admissibility under La.Code Evid. art. 404(B) does not address the question of relevance versus prejudice required by La.Code Evid. art. 403. That is a question that can only be answered when the evidence is offered at trial."). However, the court's ruling immediately precipitated a request by defense counsel for a brief conference with respondent which then led in a matter of minutes to a plea bargain in which the state reduced the third count charging sexual battery to indecent behavior with a juvenile and respondent entered his Alford pleas.
Respondent testified at the evidentiary hearing that he "plead guilty because I didn't think trial was in the best of my interest at the time because we were not prepared to rebut Ms. Frances King as part of the evidence in that trial." His *706 testimony in that regard was not entirely accurate. The transcript of the mid-trial hearing shows that defense counsel crossexamined F.K. effectively on the basis of her prior statement to the police and established that even after respondent allegedly fondled her she had considered babysitting for him and had visited his home on one occasion. Counsel thereby forced F.K. to concede that her subsequent conduct appeared wholly inconsistent with her testimony that respondent's sexual advances had confused and frightened her. Although defense counsel testified at the evidentiary hearing that a pre-trial ruling on F.K.'s testimony "would have helped me a lot," he was not wholly unprepared to meet testimony which, even without an express ruling by the trial court at that point, he and respondent could reasonably have anticipated they would have to confront at trial.
In this context, the trial court had a reasonable basis for concluding that the pressure brought to bear on the defense by the state's intent to introduce evidence of the F.K. incident stemmed not from its decision to defer ruling on the state's notice but from the state's unanticipated resourcefulness in finding the witness and producing her in open court. Although the prosecutor testified at the evidentiary hearing that it was "absolutely not" his intent to place additional pressure on respondent to reconsider his decision to stand trial by offering him a preview of F.K.'s testimony, any pressure brought to bear on respondent in that regard was "an inevitableand permissibleattribute of any legitimate system which tolerates and encourages the negotiation of pleas .... [and which] necessarily accept[s] as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (internal quotation marks and citation omitted); see also State v. Beatty, 391 So.2d 828, 830 (La.1980) ("[A] guilty plea often involves a choice between undesirable alternatives. The fact that neither road offers the prospect of a pleasant journey does not render the plea involuntary as a matter of law.").
Finally, defense counsel conceded at the evidentiary hearing that the prosecutor had informed him in advance of jury selection that he knew members of both victims' families. According to the prosecutor, at that time, defense counsel professed that any acquaintanceship would not present a problem. However, counsel testified that he did not "connect" with the information until after selection of the jury. His sudden realization caused him "some uneasiness." In particular, defense counsel and the mother of one of the victims sang in the same church choir and he "knew her very well." According to defense counsel, he conveyed that information to respondent, who testified at the evidentiary hearing that on the night before trial he had sensed that counsel had lost confidence and "was not going to be comfortable with attacking the district attorney's prosecution like he had been, like he had acted earlier."
Nevertheless, counsel's failure to "connect" immediately with the information provided by the prosecutor indicates that the relationships were too attenuated to have explained respondent's perception of counsel's eroding zeal for trial. See State v. Kirkpatrick, 443 So.2d 546, 552 (La.1983) ("In the present case, no member of the victim's family appeared as a witness so as to cause a conflict of interest [and] [d]efense counsel's familiarity with the victim's family was so attenuated that he had to question the individual that he *707 thought he recognized to confirm that she was related to the victim."). A more immediate explanation for any change of heart by defense counsel was that the sudden appearance of F.K. for trial, and the state's offer to reduce the count charging sexual battery of M.B.B. to indecent behavior with a juvenile. Counsel was well aware that the offense of sexual battery precludes parole, probation or suspension of sentence. La.R.S. 14:43.1. Because the legislature has denominated sexual battery a crime of violence, La.R.S. 14:2(13)(l), the offense also provides greatly reduced good time credits against any sentence imposed. La.R.S. 15:571.3(A)(1). The state's offer to reduce the charge had thereby opened up at least the possibility that respondent might escape a term of imprisonment altogether.
In summary, we find no abuse of the trial court's discretion in concluding that the sudden prospect of defending against evidence provided by F.K., coupled with the state's agreement to reduce the charge of sexual battery involving M.B.B., provided the impetus for respondent's pleas. The court conducted a thorough plea colloquy with respondent during which it fully advised him of the trial rights he was waiving and obtained respondent's assurances that he understood his trial rights, that he was waiving them voluntarily, and that he was satisfied with the representation he had received from defense counsel. Unlike the case in Calhoun, in which the admission by trial counsel that he simply "blew it" with regard to pre-trial preparation played an important part in our determination to set aside the guilty plea, Calhoun, 96-0786 at 10-11, 694 So.2d at 914-15, respondent's attorney testified at the evidentiary hearing that "we were prepared to refute the allegations of the two juveniles." It also appears that counsel was not caught completely off guard by the unanticipated availability of F.K. to the state. Under these circumstances, the court of appeal erred in setting aside the trial judge's ruling on respondent's motion to withdraw his pleas as an abuse of discretion.
Accordingly, the decision of the court of appeal is reversed and this case is remanded for consideration of respondent's remaining assignments of error.
JUDGMENT OF THE COURT OF APPEAL REVERSED; CASE REMANDED.
NOTES
[*] Philip C. Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.