NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-344

STATE OF LOUISIANA

VERSUS

T. V.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-06-1163
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Billy Howard Ezell, Judges.

AFFIRMED.

J. Phillip Terrell, Jr.
Attorney at Law
1150 Expressway Drive, Suite 101
Pineville, LA 71360
(318) 561-4340
Counsel for Defendant/Appellant:
    T. V.

Sherron Ashworth
Assistant District Attorney
Thirty-Third Judicial District Court
P. O. Box 839
Oberlin, LA 70655
(337) 639-2641
Counsel for Plaintiff/Appellee:
    State of Louisiana

**DECUIR, Judge.**

Defendant was convicted of indecent behavior with a juvenile, oral sexual battery of a juvenile, and attempted forcible rape. The trial court ordered Defendant to serve five years at hard labor for the indecent behavior with a juvenile conviction, eight years at hard labor for the oral sexual battery conviction, and ten years at hard labor for the attempted forcible rape conviction. The trial court ordered the first year of the attempted forcible rape sentence and all of the oral sexual battery penalty to be served without benefit of probation, parole, or suspension of sentence. The trial court also ordered the sentences to run concurrently with each other.

Defendant now appeals his convictions and his sentences.

## FACTS

A.F., who was sixteen at the time of trial, testified that Defendant is married to her aunt, L.V. A.F. remembered that L.V. lived with A.F.'s family before L.V. married Defendant. L.V. was A.F.'s best friend. A.F. began to visit L.V. at the trailer right after L.V. moved in about three years prior to the trial. Defendant was present at the trailer after work and on his off days.

A.F. reported that Defendant did things to her in the trailer at night after L.V. went to sleep and on other occasions when A.F. was alone with Defendant, such as when L.V. was at work. At first, Defendant was nice to A.F., but he began grabbing her breasts and her behind. A.F. tried to make him stop, but he would not. The touching, at first, was over A.F.'s clothing.

A.F. revealed that Defendant began touching her under her clothes when they were alone. A.F. also stated that Defendant would interrupt A.F. while she was showering, sticking his head through the shower curtain when she was naked. The touching also occurred when L.V. was in the trailer but asleep. Defendant never grabbed her in L.V.'s presence.

When A.F. spent the night at Defendant's home, she would either sleep in the spare bedroom or on the couch in the living room. The spare bedroom had a twin-sized bed set without a frame. When she slept in the spare bedroom, Defendant would enter the room, kneel beside the bed, and put his hands on her. A.F. slept fully clothed: a t-shirt and shorts or pajama pants. A.F. had slept in the skirt she wore to church, but it was easier for Defendant to put his hand in her skirt than in her shorts, so she mostly slept in pajama pants. A.F. testified that, on those occasions, Defendant touched her on her breasts, her behind, and her "private place."

A.F. tried to stop Defendant from removing her shorts and underwear, but she was unsuccessful; Defendant was bigger than her. A.F. stated that Defendant would touch her vagina with his hands and his mouth. Defendant would put his fingers inside A.F. Defendant would also put his mouth on her vagina and move his tongue around; when he did this, Defendant would play with his private part. Defendant never said anything while performing those acts.

A.F. asserted that she had also seen Defendant's private area. Defendant would pull "it" out when he was walking around the house; most of the time L.V. was out of the room when Defendant did this; L.V. was never looking when he did it while L.V. was in the room. The touching happened in other parts of the trailer as well as the spare bedroom. Defendant would also insert his private part into A.F.'s mouth. Defendant would instruct her to put her mouth on him, and A.F. would tell him, "no." Defendant would not hold his private in her mouth for long; it happened more than once but not a lot. However, the cunnilingus happened every time.

A.F. alleged that, on one occasion when L.V. was at work, she went to use the only working bathroom at the time, which was the one in Defendant's bedroom. When A.F. came out of the bathroom, Defendant blocked the bedroom door. A.F.

tried to go around him, but he would not let her out; she tried to get away, but he pushed her down on the bed. Defendant said, "Do not tell her." Defendant held A.F.'s hands with one hand and used the other to remove her shorts. Defendant fondled his private part with his hand before attempting to insert it into A.F.'s private place. A.F. disclosed that Defendant's private part went into her private place before he stopped.

A.F. stated that she did not bleed, that she did not really feel anything, and that she was mad. A.F. tried to make Defendant get off her, but she could not move him. Afterward, Defendant told A.F. that he would beat her if she told anyone. A.F. later avoided this type of incident by telling Defendant that it was her time of the month.

A.F. could not remember anything coming out of Defendant's private part during any of the episodes. A.F. first saw Defendant's private part right after she first started spending time at the trailer. A.F. recalled that, at first, Defendant did not have a piercing; but later on, Defendant had a silver ring with a little ball piercing the side of his penis toward the top and about in the middle.

A.F. maintained that Defendant had also done these things to her while her brother, D.F., and her grandmother were in the trailer. A.F. also averred that Defendant would play pornography on the television in front of her and D.F. L.V. would make Defendant turn off the pornography. A.F. did not tell L.V. what had been happening because she did not want to hurt L.V. A.F. went to the trailer to spend time with L.V.; A.F. did not go there to see Defendant. A.F. was not sure if L.V. would still be her friend if she told. A.F. was too embarrassed to tell anyone what was happening. A.F. averred that she cut herself to get her mind off what was going on; she hated her life. A.F. did not like what was happening, but she knew that it would hurt L.V. to find out. A.F. halfway believed Defendant's threats, but A.F.

3

did not care whether or not Defendant beat her; she just did not want L.V. to know about the abuse. Since A.F. came forward, she and L.V. still speak, but they are no longer as close as they were.

## SUFFICIENCY OF THE EVIDENCE

Defendant argues that "[t]he jury could not have concluded reasonably that the defendant committed attempted forcible rape, oral sexual battery, and indecent behavior[,] and to do so was manifest error." Defendant alleges that the victim's account of events was unbelievable. Defendant continues that the victim did not fit the profile given by the State's expert witness for someone who would delay disclosure. Defendant further maintains that the State's witnesses who testified that they knew about the offenses for two years were also incredible because, during that time, the victim was both allowed and encouraged to spend time with Defendant and his wife. Defendant next contends that the victim's brother's testimony was unbelievable because the incidents occurred within twenty feet of where the brother was sleeping and because the brother would have been uncomfortable with Defendant continually exposing himself. Finally, Defendant argues that his size made it impossible for him to commit the offenses in the manner described by the victim. Defendant contends that after all of the unbelievable evidence is omitted, there, at best, is sufficient evidence to constitute felony grade indecent behavior with a juvenile. Therefore, Defendant appeals his convictions based upon the credibility of the State's witnesses.

The supreme court has discussed the standard for reviewing sufficiency of the evidence claims:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

4

> *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d
> 560 (1979) . . . . A determination of the weight of evidence is a question
> of fact, resting solely with the trier of fact who may accept or reject, in
> whole or in part, the testimony of any witnesses. . . . A reviewing court
> may impinge on the factfinding function of the jury only to the extent
> necessary to assure the *Jackson* standard of review. . . . It is not the
> function of an appellate court to assess credibility or re-weigh the
> evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

CREDIBILITY OF THE STATE'S WITNESSES:

Louisiana courts have previously addressed the extent to which a reviewing court may review the factfinder's credibility determinations. "It is not the function of an appellate court to assess credibility." *Id*. at 1286. "The actual trier of fact's *rational* credibility calls . . . are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution." *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). "[T]he actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *Id*. at 1310. "In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the court, is sufficient to support a conviction or convictions." *State v. Stec*, 99-633, pp. 4-5 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.

After reviewing the testimony presented by the State's witnesses and the physical evidence submitted into the record, we find no internal contradictions or irreconcilable conflicts with physical evidence that would make the jury's credibility determination beyond the bounds of rationality. Accordingly, Defendant's arguments regarding the credibility of the prosecution's witnesses are without merit.

5

INDECENT BEHAVIOR WITH A JUVENILE:

At the time of the accused offenses, the crime of indecent behavior with juveniles included the commission of any lewd or lascivious act with the intention of arousing or gratifying sexual desire in the presence of any child under the age of seventeen where the perpetrator is more than two years older than the child. La.R.S. 14:81(A) as last amended by 1997 La.Acts No 743, §1. "Specific intent to commit the offense of indecent behavior with a juvenile need not be proven as a fact, but may be inferred from the circumstances and actions of the defendant." *State v. Parker*, 42,311, p. 4 (La.App. 2 Cir. 8/15/07), 963 So.2d 497, 502, *writ denied*, 07-2053 (La. 3/7/08), 977 So.2d 896 (citing *State v. Blanchard*, 00-1147 (La. 4/20/01), 786 So.2d 701).

The pertinent facts of this case show that Defendant repeatedly exposed his genitals to A.F. and also played pornography videos when she was present in the room. The evidence also shows that Defendant touched A.F. on her breasts, behind, and private place both over and under her clothing. A.F. was under seventeen at the time these acts occurred, and there is more than two years age difference between Defendant and A.F.

We find that there was sufficient evidence introduced at trial, when viewed in the light most favorable to the prosecution, to support a rational finding that the State proved, beyond a reasonable doubt, that Defendant committed indecent behavior with a juvenile.

ORAL SEXUAL BATTERY:

Defendant also asserts that there was insufficient evidence to prove that he committed oral sexual battery:

> Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the

6

offender when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:

(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or

(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

La.R.S. 14:43.3(A).

The evidence presented at trial showed that A.F. was not Defendant's spouse at the time of the inappropriate activity. Beginning in 2004 and lasting through part of 2006, Defendant would put his mouth on A.F.'s genitals and also put his penis in A.F.'s mouth. A.F. was born in September 1991, meaning A.F. was twelve or thirteen when the inappropriate conduct began and fourteen when Officer Kennedy received the report. Defendant was more than three years older than A.F.

In *State v. Darbonne*, 01-39 (La.App. 3 Cir. 6/6/01), 787 So.2d 576, 580, *writ denied*, 02-533 (La. 1/31/03), 836 So.2d 64, the thirty-year-old defendant persuaded his thirteen-year-old victim to allow the defendant to perform oral sex on the victim, and the offender also persuaded the victim to perform oral sex on the defendant. This court found the evidence sufficient to prove, beyond a reasonable doubt, that the defendant had violated La.R.S. 14:43.3(A)(1) and (2).

The evidence presented at trial was sufficient to support Defendant's conviction for oral sexual battery.

ATTEMPTED FORCIBLE RAPE:

Defendant urges this court to find that the prosecution failed to prove that Defendant committed attempted forcible rape:

Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.

La.R.S. 14:42.1(A). "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended . . . ." La.R.S. 14:27(A).

In order to commit attempted forcible rape, the offender must actively desire to commit rape by preventing the victim from resisting the act by force or threats where the victim may reasonably believe that such resistance would not prevent the rape. A conviction of an attempted offense must rest upon the sufficient proof that the offender actually desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. Furthermore, specific intent is a legal conclusion ultimately to be resolved by the trier of fact.

*State v. Voorhies*, 590 So.2d 776, 778 (La.App. 3 Cir. 1991).

The evidence presented at trial, when viewed in the light most favorable to the prosecution, shows that Defendant held A.F. down while A.F. tried to push him off of her. Defendant restrained A.F.'s hands while he removed A.F.'s shorts. Defendant then penetrated A.F.'s genitals with his penis. It did not hurt, did not bleed, and did not rupture A.F.'s hymen. It is possible for a female A.F.'s age to engage in intercourse without rupturing her hymen.

When viewed in the light most favorable to the prosecution, the evidence presented at trial was sufficient to support Defendant's attempted forcible rape conviction.

8

Based on the foregoing discussion, this assignment of error is without merit.

## FAILURE TO EXCLUDE JUROR

Defendant asserts that "[t]he trial court erred in not excluding a juror who made inaccurate statements during voir dire concerning his previous conviction for a felony." Defendant alleges that, during the course of the trial, information obtained about Juror Powers revealed that Juror Powers did not truthfully answer questions during voir dire concerning his criminal record. Although Juror Powers stated during voir dire that he had no criminal record, Juror Powers had previously pled guilty to a felony, which conviction had subsequently been expunged from his record. The discussion and ruling shows that Juror Powers did not say that he had pled guilty; also, during the discussion on the record, the offense was classified as a crime, not as a felony. Additionally, Juror Powers indicated that whatever it was happened when he was seventeen, so it may have been a juvenile matter.

Defendant contends that it is of little moment that he still had peremptory strikes remaining when the jury was empaneled; the trial court should have struck Juror Powers from the jury. Defendant urges that the resulting mistrial would have been appropriate because "there is no possible way to excise Power[s]'s influence and participation[;] the verdict reached with his presence is again fatally flawed." Defendant cites no legal authority in support of this assignment of error.

"Except for the limited purposes stated in Articles 920 and 921 [which both concern destruction of expunged records], upon an order of expungement, the conduct and conditions expunged are considered nonexistent and are to be treated as such upon inquiry." La.Ch.Code art. 922; La.R.S. 44:90. Therefore, the trial court did not err in retaining Juror Powers as Juror Powers appropriately denied the expunged criminal history.

Accordingly, this assignment of error is without merit.

**EXCESSIVENESS OF SENTENCE**

Defendant contends that "[t]he sentence[s] imposed by the trial court [are] excessive." Defendant explains that, during the sentencing hearing, he presented very credible testimony from a variety of people concerning his good reputation. These people included school employees, a minister, and his family. At the hearing Defendant additionally presented nearly seventy letters from the citizens in his community asking the court for leniency in sentencing Defendant. Defendant also points out that he is a first-time felony offender. Based on these factors, Defendant urges this court to find that his sentences were constitutionally excessive.

In his "Motion to Reconsider Sentence" filed with the trial court, Defendant simply alleged, "It is respectfully represented that the sentence imposed by this Honorable Court is excessive and violative of your mover[']s rights under the US and LA State Constitution[s]." At the motion to reconsider sentence hearing held on March 18, 2008, defense counsel asserted that the sentences were excessive because Defendant is a first-time offender with no prior criminal history, because Defendant presented extensive evidence regarding his previous good character, because Defendant has an excellent work history, and because Defendant has family and community support. The trial court denied Defendant's motion.

We have reviewed the trial court's reasons for ruling, both in imposing the penalties and in denying Defendant's motion to reconsider. They clearly indicate that the court considered all of the mitigating and aggravating factors presented by Defendant, which include those argued by Defendant in this assignment of error.

10

STANDARD OF REVIEW:

This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

In *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, the fifth circuit held that a reviewing court should consider three factors in reviewing sentences imposed by the trial court: (1) "the nature of the crime," (2) "the nature and background of the offender, and" (3) "the sentence imposed for similar crimes by the same court and other courts."

SENTENCE FOR INDECENT BEHAVIOR WITH A JUVENILE:

Defendant claims that his five-year hard labor sentence for the indecent behavior with a juvenile conviction is excessive. The maximum penalty for the offense at the time it was committed was seven years at hard labor:

> Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.

11

La.R.S. 14:81(C) as last amended by 1997 La. Acts No. 743, §1. Therefore, Defendant's five-year hard labor sentence is within the zero to seven years sentencing range set forth by the statute.

In *State v. Whatley*, 06-316 (La.App. 3 Cir. 11/2/06), 943 So.2d 601, 608, *writ denied*, 06-2826 (La. 8/31/07), 962 So.2d 424, this court affirmed a defendant's five-year hard labor sentence for indecent behavior with juveniles. The trial court suspended eighteen months of the sentence and placed the defendant on three years of supervised probation. Before affirming the sentence, this court reviewed the facts of the case. The defendant hugged and kissed the victim before following her to her bedroom where she was watching a movie. The defendant sat on the bed with the victim between his legs and rubbed her back and neck before touching the sides of her breasts over her clothing. When the victim got up, the defendant hugged her and slid his hand into the back of her pants. The victim broke away, and the defendant left her house. Thus, unlike the instant case, Whatley received his five-year sentence, with eighteen months suspended, for a single instance of inappropriate behavior; whereas, in the instant case, Defendant's improper behavior persisted over a two-year period.

In *State v. Kirsch*, 02-993 (La.App. 1 Cir. 12/20/02), 836 So.2d 390, *writ denied*, 03-238 (La. 9/5/03), 852 So.2d 1024, the first circuit affirmed the defendant's seven-year hard labor sentence, which had three years suspended. The defendant's conviction arose from a single instance wherein he showed his eight-year-old victim pornographic material, removed her clothing, looked at her private parts, touched her clothed vaginal area, and placed her hand on his clothed crotch.

In *State v. Armstrong*, 29,942 (La.App. 2 Cir. 10/29/97), 701 So.2d 1350, the second circuit affirmed a seven-year hard labor sentence for indecent behavior with

12

a juvenile. The nine-year-old victim reported that her step-grandfather had repeatedly fondled her breasts and vaginal area during a visit to his home in 1994. The defendant pled guilty and admitted to doing those things on at least two occasions. Although the opinion did not note any prior convictions, it revealed that letters included in the PSI alleged that the defendant had a history of molesting family members. Thus, unlike Defendant in the instant case, Armstrong had a history of inappropriate conduct. However, also unlike the instant case, the improper conduct serving as a basis for Armstrong's conviction occurred over a brief period of time.

Based on the facts of the instant case, the findings by the trial court, and the concurrent nature of the sentences, we find that the trial court did not abuse its discretion in sentencing Defendant for the indecent behavior with a juvenile conviction.

ORAL SEXUAL BATTERY:

Defendant next urges that his oral sexual battery sentence is excessive. The trial court ordered Defendant to serve eight years at hard labor without benefit of probation, parole, or suspension of sentence for the oral sexual battery conviction. "Whoever commits the crime of oral sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years." La.R.S. 14:43.3(C) as last amended by 2001 La. Acts No. 301, § 1. Thus, Defendant's sentence is within the parameters set forth by statute.

Based on the facts of the instant case, the findings by the trial court, and the concurrent nature of the sentences, we find that the trial court did not abuse its discretion in sentencing Defendant for the oral sexual battery conviction. *State v. Polizzi*, 05-478 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, *writ denied*, 06-1052 (La.

13

11/3/06), 940 So.2d 660; *State v. Hutson*, 34,510 (La.App. 2 Cir. 5/9/01), 786 So.2d 226, *writ denied*, 01-1997 (La. 3/28/02), 812 So.2d 655; *State v. Martinez*, 39,332 (La.App. 2 Cir. 12/22/04), 890 So.2d 761.

ATTEMPTED FORCIBLE RAPE:

Defendant contends that ten years at hard labor for attempted forcible rape is excessive under the circumstances of the instant case. "Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence." La.R.S. 14:42.1(B). A defendant convicted of attempting an offense "shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." La.R.S. 14:27(D)(3). Thus, Defendant's ten-year sentence is a mid-range penalty for attempted forcible rape.

Based on the facts of the instant case and the findings by the trial court, we find that the trial court did not abuse its discretion in sentencing Defendant to ten years at hard labor. *State v. Wilson*, 42,075 (La.App. 2 Cir. 5/9/07), 957 So.2d 345; *State v. Holley*, 01-254 (La.App. 3 Cir. 10/3/01), 799 So.2d 578.

Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.

14