LEWIS BROWN,
v.
JIMMY LEBLANC, SECRETARY OF DEPARTMENT OF CORRECTIONS, AND BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY.
No. 2009 CA 1602.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication.
LEWIS E. BROWN, Louisiana State Penitentiary, Angola, LA, Plaintiff/Appellant, pro se.
TERRI L. CANNON, Baton Rouge, LA, Counsel for Defendant/Appellee, Louisiana Department of Public, Safety and Corrections.
Before: WHIPPLE, HUGHES, and WELCH, JJ.
WHIPPLE, J.
This is an appeal by Lewis Brown, an inmate in the custody of the Department of Public Safety and Corrections (the DPSC), from a judgment of the district court, dismissing his petition for judicial review of administrative remedy procedure ("ARP") number LSP-2007-4004. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In 1972, Brown pled guilty to aggravated rape, and he was subsequently sentenced to life imprisonment. Brown filed an ARP in 2007, contending that his incarceration beyond the initial ten years and six months of the original life sentence violated his constitutional rights. Specifically, Brown contended that at the time he was sentenced to life imprisonment, LSA-R.S. 15:571.7 provided that he would only have to serve ten years and six months in the custody of the DPSC to satisfy his life sentence. However, Brown further averred, at the time he requested commutation of his sentence in 1982, the DPSC had adopted a "new" policy prohibiting anyone at the Louisiana State Penitentiary from making recommendations for commutation of life sentences. Thus, he contended that this new policy violated his constitutional rights, as well as the Louisiana governor's exclusive constitutional right to commute sentences.
Brown was denied relief at both administrative levels. Thereafter, Brown appealed to the Nineteenth Judicial District Court, which dismissed his petition for judicial review upon the recommendation of the commissioner.
Brown now appeals to this court, contending that the district court erred: (1) in finding there was no illegal imposition of an "administrative fiat" by the DPSC, prior to the enactment of Acts 1979, No. 490 (repealing LSA-R.S. 15:571.7), which administrative fiat had the effect of an ex post facto application of law; (2) in stating that Brown had "identical" commutation of sentence provisions available to him as he had prior to the repeal of LSA-R.S. 15:571.7; and (3) in failing to recognize that the administrative fiat applied by the DPSC from 1972 through July 12, 1979 (the effective date of the repeal of LSA-R.S. 15:571.7) violated the separation of powers requirements of both the United States and Louisiana constitutions.

LAW AND ANALYSIS
Prior to the repeal of this earlier version of LSA-R.S. 15:571.7, the statute provided as follows:
Whenever a prisoner who has been convicted of a crime and sentenced to imprisonment for life, so conducts himself as to merit the approval of the superintendent of the state penitentiary he may apply for a commutation of his sentence and the application, upon approval of the superintendent, shall be forwarded to the governor. The governor may commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had or any two of them. No commutation under the provisions of this Section shall reduce the period of incarceration to less than ten years and six months.
This statute was commonly referred to as the "10-6 law," as it essentially provided that the warden of the State's prison could make a recommendation to the governor regarding inmates serving life terms, and the governor was granted the discretion to act on the recommendation to reduce a life term to a fixed number of years, not less than ten years and six months. Former LSA-R.S. 15:571.7 was repealed by La. Acts 1979, No. 490, § 2. Despite repeal of the statute, Brown contends that the DPSC should have applied the provisions of former LSA-R.S. 15:571.7 to his life sentence.
On appeal, Brown claims that he is not asserting that "Acts 1979, No. 490 in and of itself is an ex-post facto law." Rather, he contends that from 1972 through July 12, 1979, even prior to the 1979 repeal of LSA-R.S. 15:571.7, the DPSC imposed an "administrative fiat" forbidding the warden of the Louisiana State Penitentiary from forwarding 10-6 applications and recommendations for the commutation of life sentences to the governor. Brown contends that this "administrative fiat": (1) interfered with the "mandatory requirement" of LSA-R.S. 15:571.7 that the warden forward a 10-6 recommendation to the Governor's office for consideration; (2) constituted an illegal usurpation of the authority of the governor to exercise his optional and discretionary right to commute life sentences in violation of the separation of powers requirement of La. Const. art. 2, § 2; and (3) constituted an ex post facto application of Acts 1979, No. 490, before it was ever enacted.
At the outset, we note that in State v. Dunn, 408 So. 2d 1319, 1322 (La. 1982) and State ex rel. Turner v. Maggio, 463 So. 2d 1304, 1307 (La. 1985), the Louisiana Supreme Court has held that former LSA-R.S. 15:571.7 neither mandated automatic commutation by the governor nor created any right to commutation or even consideration for commutation. Additionally, contrary to Brown's contention herein that former LSA-R.S. 15:571.7 "mandated" that the warden forward a 10-6 recommendation for every lifer to the governor, as noted by the supreme court, the language of former LSA-R.S. 15:571.7 specifically provided that both the warden's decision to recommend a commutation and the governor's decision to commute were totally within the discretion of the warden and the governor. Dunn, 408 So. 2d at 1322. Thus, any decision by the warden to refrain from recommending commutations of sentence would have been within his statutory authority and would not have violated any alleged statutory requirement to the contrary. If the warden therefore exercised his authority to refrain from recommending a commutation, the governor's discretion to ultimately decide whether the recommended commutation was appropriate would not have been invoked and, thus, could not have been usurped.
Additionally, with regard to Brown's argument alleging an ex post facto application of the repeal of the 10-6 law (which he alleges in effect occurred by "administrative fiat" even prior to legislative repeal of the 10-6 law), we note that according to Brown's own allegations in the administrative record before us, Brown did not request that the warden recommend commutation of his life sentence until 1982, three years after the passage of Acts 1979, No. 490, repealing the 10-6 law. Thus, any prior actions of the warden in refraining from making recommendations for commutation as alleged by Brown to have occurred prior to the repeal of the 10-6 law clearly were not personally directed toward any request by Brown for a 10-6 recommendation and, thus, did not personally affect Brown.
Nonetheless, addressing these concerns, we note that the relevant inquiry in an ex post facto analysis is not whether a subsequent change in the law operated to an inmate's disadvantage or impacted an inmate's opportunity to seek early release from physical custody, but whether the change in the law altered the definition of criminal conduct or increased a criminal penalty. California Department of Corrections v. Morales, 514 U.S. 499, 505, 115 S. Ct. 1597, 1601, 131 L. Ed. 2d 588 (1995); State ex rel. Olivieri v. State, XXXX-XXXX, XXXX-XXXX (La. 2/21/01), 779 So. 2d 735, 743-744, cert. denied sub nom., Olivieri v. Louisiana, 533 U.S. 892, 121 S. Ct. 2566, 150 L. Ed. 2d 730 (2001), and Hutchinson v. Louisiana, 534 U.S. 892, 122 S. Ct. 208, 151 L. Ed. 2d 148 (2001). When the 10-6 law was repealed, the repeal neither altered the definition of criminal conduct nor increased the criminal penalty for the conduct for which Brown was convicted. Additionally, given that former LSA-R.S. 15:571.7 did not create even the right to consideration for commutation, Brown did not lose the non-existent right to have his sentence commuted either when former LSA-R.S. 15:571.7 was repealed, or at any earlier date when the warden allegedly began refraining from forwarding 10-6 recommendations to the governor. Accordingly, the repeal of former LSA-R.S. 15:571.7 and the failure to apply it to Brown's life sentence do not constitute an ex post facto application of the law. This argument also lacks merit.
Finally, regarding Brown's argument that the district court erred in stating that Brown had "identical" commutation of sentence provisions available to him as he had prior to the repeal of LSA-R.S. 15:571.7, our review of the record reveals no such statement by the district court or by the commissioner to which this matter was assigned. Rather, the commissioner noted in his recommendation that, following the repeal of LSA-R.S. 15:571.7, Brown was only denied the opportunity to seek a commutation by use of the "particular procedure" previously provided in LSA-R.S. 15:571.7, but that Brown now could seek a commutation of his life sentence pursuant to the requirements of LSA-R.S. 15:572.4. Accordingly, this argument also lacks merit.

CONCLUSION
For the above and foregoing reasons, the April 20, 2009 judgment of the district court, dismissing Brown's petition for judicial review, is affirmed. Costs of this appeal are assessed against Lewis Brown.
AFFIRMED.